IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

CLARENCE BERNARD GREEN,    §
(TDCJ-CID #1644750)    §
    §
         Petitioner,    §
    §
VS.    §    CIVIL ACTION NO. H-14-1017
    §
WILLIAM STEPHENS,    §
    §
         Respondent.    §

## MEMORANDUM AND OPINION

The petitioner, Clarence Bernard Green, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging a 2010 state felony conviction for aggravated robbery. The respondent filed a motion for summary judgment, (Docket Entry No. 11), with a copy of the state court record. Green filed a response. (Docket Entry No. 13). Based on careful consideration of the pleadings, the motion and response, the record, and the applicable law, this court grants the respondent's motion and, by separate order, enters final judgment. The reasons are set out below.

## I.    Background

A jury found Green guilty of the felony offense of aggravated robbery. (Cause Number 113776). On May 12, 2010, the jury sentenced Green a 99-year prison term. The Fourteenth Court of Appeals of Texas affirmed Green's conviction on July 12, 2012. *Green v. State,* No. 14–10–00438–CR, 2012 WL 2783862 (Tex. App. – Houston [14th Dist.] 2012, no pet.) (not designated for publication). The Texas Court of Criminal Appeals refused Green's petition for discretionary review on September 12, 2012. Green filed an application for state habeas corpus relief on September 30, 2013, which the Texas Court of Criminal Appeals denied on February 26, 2014,

without written order, on the trial court's findings, without a hearing. *Ex parte Green,* Application No. 80,911-01 at cover.

On April 14, 2014, this court received Green's federal petition.  Green contends that his conviction is void for the following reasons:

    (1)    the evidence was insufficient to support the conviction because the complainant's uncertain identification did not corroborate the accomplice's testimony;

    (2)    the pretrial identification was unnecessarily suggestive because the police officer told the complainant to pick the closest man she saw in the video, and she used her son as an interpreter during the live proceedings;

    (3)    trial counsel, Michael Fosher, rendered ineffective assistance by failing to object to false and perjured testimony about a bandana worn during the robbery; and

    (4)    the prosecutor engaged in misconduct by:

        (A)    knowingly using false and perjured testimony about a bandana worn during the robbery and including this in the State's opening; and

        (B)    failing to disclose that identity person who provided the Crime Stopper's tip was Ashley Hudson, the accomplice witness.

(Docket Entry No. 1, Petition for Writ of Habeas Corpus, pp. 6-8).

The claims are analyzed under the applicable law.

## II.    The Applicable Legal Standards

Green's petition for writ of habeas corpus is reviewed under the federal habeas statutes as amended by the Antiterrorism and Effective Death Penalty Act of 1996. 28 U.S.C. § 2254.  The AEDPA provides as follows:

(d)  An application for a writ of habeas corpus on behalf of a person
in custody pursuant to the judgment of a State court shall not be
granted with respect to any claim that was adjudicated on the merits
in State court proceedings unless the adjudication of the claim –

(1)  resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
State court proceeding.

(e)(1)  In a proceeding instituted by an application for a  writ of
habeas corpus by a person in custody pursuant to the judgment of a
State court, a determination of a factual issue made by a State court
shall be presumed to be correct. The applicant shall have the burden
of rebutting the presumption of correctness by clear and convincing
evidence.

Subsections 2254(d)(1) and (2) of AEDPA set out the standards of review for questions of

fact, questions of law, and mixed questions of fact and law that result in an "adjudication on the

merits." An adjudication on the merits "is a term of art that refers to whether a court's disposition

of the case is substantive, as opposed to procedural." *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir.

2000).

A state-court determination of questions of law and of mixed questions of law and fact is

reviewed under 28 U.S.C. § 2254(d)(1). The state-court determination receives deference unless it

"was contrary to, or involved an unreasonable application of clearly established Federal law, as

determined by the Supreme Court of the United States." *Hill v. Johnson,* 210 F.3d 481, 485 (5th Cir.

2000).

A state-court decision is "contrary to" Supreme Court precedent if: (1) the state court's

conclusion is "opposite to that reached by [the Supreme Court] on a question of law" or (2) the "state

court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent"
and arrives at an opposite result. *Williams v. Taylor,* 120 S. Ct. 1495 (2000). A state court
unreasonably applies Supreme Court precedent if: (1) it unreasonably applies the correct legal rule
to the facts of a particular case; or (2) it "unreasonably extends a legal principle from [Supreme
Court] precedent to a new context where it should not apply or unreasonably refuses to extend that
principle to a new context where it should apply." *Id.* at 1495. The issue is whether the application
was "objectively unreasonable." *Id.* at 1495; *Penry v. Johnson,* 215 F.3d 504, 508 (5th Cir. 2000).
The state court's factual findings are "presumed to be correct . . . and [receive] deference . . . unless
. . . based on an unreasonable determination of the facts in light of the evidence presented in the State
court proceeding.'" *Hill,* 210 F.3d at 485 (quoting 28 U.S.C. § 2254(d)(2)).

Pure fact questions are governed by § 2254(d)(2). *Martin v. Cain,* 246 F.3d 471, 475 (5th
Cir. 2001). A state court's factual findings are entitled to deference on federal habeas corpus review
and are presumed correct under 28 U.S.C. § 2254(e)(1), unless the petitioner rebuts those findings
with "clear and convincing evidence." *Garcia v. Quarterman,* 454 F.3d 441, 444 (5th Cir. 2006)
(citing *Hughes v. Dretke,* 412 F.3d 582, 589 (5th Cir. 2005) and 28 U.S.C. § 2254(e)(1)). This
deference extends not only to the state court's express fact findings but also to implicit findings.
*Garcia,* 454 F.3d at 444-45 (citing *Summers v. Dretke,* 431 F.3d 861, 876 (5th Cir. 2005); *Young v.
Dretke,* 356 F.3d 616, 629 (5th Cir. 2004)).

While, "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to
summary judgment, applies with equal force in the context of habeas corpus cases," *Clark v.
Johnson,* 202 F.3d 760, 764 (5th Cir.), *cert. denied,* 531 U.S. 831 (2000), the rule applies only to the
extent that it does not conflict with the habeas rules. Section 2254(e)(1) – which requires that a state

court's fact findings are "presumed to be correct" – overrides the ordinary rule that, in a summary judgment proceeding, disputed facts are construed in the light most favorable to the nonmoving party. Unless the petitioner can "rebut[ ] the presumption of correctness by clear and convincing evidence," the state court's fact findings must be accepted as correct. *Smith v. Cockrell,* 311 F.3d 661, 668 (5th Cir. 2002).

Green is a *pro se* petitioner. *Pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as pleadings lawyers file. *See Martin v. Maxey,* 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh,* 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti,* 648 F.2d 268, 271 (5th Cir. Unit A June 1981). This court broadly interprets Green's state and federal habeas petitions. *Bledsue v. Johnson,* 188 F.3d 250, 255 (5th Cir. 1999).

### III.   Factual Background

The Fourteenth Court of Appeals summarized the trial testimony, as follows:

> Myong Soon Lee owns and operates a beauty supply store in southwest Houston. On February 19, 2008, Lee was behind the register when two individuals, one male and one female, came into the store pointing guns and yelling "get down." Both robbers were wearing "hoodies" (hooded sweatshirts) and had their faces covered. The woman, who wore a gray hoodie and a bandanna over her face, ordered Lee's employees to a back room while the man, who wore a black hooded jacket and had his face covered with a stocking mask, held a gun to Lee's head and demanded all the money in the register. Lee gave the man all the cash she had, about $600–$700 in total. After the robbers left, Lee activated an alarm in her store that contacts the police in the event of a hold-up, and Officer Bob Conley of the Houston Police Department responded to the scene. According to Officer Conley, Lee described the female as black but gave virtually no description of the male except that he was wearing a hoodie around his face. The description Officer Conley recorded read "[u]nknown male, unknown age, didn't really give a height or weight." None of Lee's employees were able to give any further description of the male robber. The store has 16 security cameras,

one of which captured images of two people approaching the store through an adjacent alley moments before the robbery. One of the people, who appears to be female, is shown wearing jeans and a gray hoodie and is depicted looking down, with her face not visible. The other, who is identifiably male, is shown wearing what appears to be a green hooded jacket over a black shirt or hoodie. The male's face is visible at a distance. Seconds later, internal cameras recorded the same woman, her face covered with a bandanna, pointing a gun at store employees and forcing them to the back of the store, while the register camera recorded a man wearing a black hooded coat holding a gun to Lee as she took cash from the register. In this recording, the man is looking down and his face is not visible.

About two months after the robbery, the police received a tip from an informant named Ashley Hudson. Hudson testified that on the night of the robbery, she, appellant, a female named Dishekaer Smith, and a male identified only as "Jahree" were driving around the area near Lee's store when, "in the spur of the moment," they decided to rob it. Hudson pulled the car into an apartment complex and parked next to a wall adjoining the shopping center in which Lee's store is located. According to Hudson, appellant, Smith, and Jahree pulled on hoodies and wrapped bandannas around their faces, and appellant handed out guns. Appellant took a .38 caliber revolver with a silver barrel and light brown handle. Smith took a .25 caliber semiautomatic pistol, while Jahree took a black "Tech 9" automatic weapon. Appellant, Smith, and Jahree climbed over the adjoining wall while Hudson waited in the car. The three were gone less than fifteen minutes. When they returned, they carried a bag full of money. Back at appellant's apartment, the crew divided up the money. Hudson's share, which she estimated to contain less than those of the other robbers, came to something less than $200. At trial, Hudson identified the man shown in the external surveillance video as appellant and the female as Smith.

The police began to look for appellant and found that he was wanted under a number of outstanding municipal warrants for traffic violations. The police spotted appellant's car and pulled him over. Appellant was driving, with Smith in the front passenger seat. Appellant consented to let the police search his car, and they found a black knit stocking cap or ski mask in the back cargo area along with three baseball hats, cellular phones, and other personal items. The police asked appellant for permission to search his apartment, which he granted. In a bedroom, they found several guns, including a .25

caliber semiautomatic pistol and .38 caliber revolver with a light brown handle and silver barrel.   They also found more cellular phones, bandannas, and a number of black hoodies.

The police contacted Lee and asked her to view a live lineup consisting of appellant and five other black males of similar descriptions.  The men were told to wrap bandannas around their faces and say "get down." Lee, who speaks broken English, was accompanied by her son. Lee's son interpreted as the officers read Lee instructions and asked her to identify a suspect. Lee brought footage from her store's security cameras to the lineup and looked at it periodically to aid in identifying the robber.  Lee identified appellant as the robber and appellant was charged with aggravated robbery.

Before trial, appellant moved to suppress all "evidence of identification by any witness from any third party witness who may have been present at any show-up or line-up proceeding or photograph identification proceeding."  The trial court denied this motion.  At trial, before Lee identified appellant in court, an identification hearing was held outside the jury's presence.  Lee testified at the hearing without an interpreter.  She stated that although the male robber wore a black hoodie and his face was covered with a stocking cap, Lee could tell he was black because of "his voice, dress and complexion, his figure" and added that "[b]ecause the stocking mask was so thin, I could see his face.  I could tell very clearly the man and I could tell between man and woman."  She further noted that she had told the police that the robber was "skinny" and carried a small silver-colored gun.  Lee also discussed the lineup she had attended some two months after the robbery.   Her testimony about this lineup is riddled with contradictions and appears to suffer from the lack of an interpreter.  Asked if she had been told that the suspected perpetrator might not be in the lineup, Lee responded "No," but she later said that the officer administering the lineup "might have said, but I would not understand him."  Lee stated that she had understood she was "to pick out the most closest one." When asked, "did you believe that was the person who robbed you?" she replied, "Yes." But when asked, "So, in other words, you're not sure if [appellant] is the suspect?" Lee responded that she was "not quite certain" appellant was the robber, adding that she believed he was "because [she] saw it through the camera" she had brought to the lineup and "his complexion is very close."

Officer John Varela, who administered the lineup, also testified at the identification hearing. Officer Varela stated that he had read Lee the standard instructions for such lineups, which he read into the record as follows:

In a moment you're going view a live lineup. The persons in the lineup may or may not be the person or persons who committed the crime now being investigated. Keep in mind that hairstyles, beards and mustaches may be easily changed. And also the lineup may not always depict the true complexion of a person. It may be lighter or—it may be lighter or darker. When you've seen the entire lineup, tell me whether or not you see the person or persons who committed the crime. Do not tell other witnesses that you have or have not identified anyone.

The trial court denied appellant's motion to suppress Lee's in-court identification.

The next day, Lee testified before the jury, this time with the aid of an interpreter. She identified appellant, without objection, as the robber. [FN1] Regarding the line-up identification, Lee stated that she had discussed her prior testimony with her son and now recalled that she had not been told to identify "the closest one" but rather "the very one" who had robbed her. She added that because of the lack of an interpreter the day before, she "was confused with the translation a little bit." The following exchange then took place:

FN1. On appeal, appellant does not challenge the admissibility of Lee's in-court or pretrial identifications.

[APPELLANT]: Now, was this the same son that you talked to last night that took her to the identification hearing or to the lineup?

A. Yes.

Q. Okay. So, now, you remember yesterday saying that you were not certain that [appellant] was the suspect?

A. Yes.

Q. And you were testifying truthfully yesterday, correct?

A. Yes.

Q. Okay.  So, your testimony is then that you were not certain that this is the suspect.

A. Right.

Q. Okay.  Now, when you came into the courtroom today, you saw [appellant] sitting at the counsel table, correct?

A. Yes.

Q. And he was seated next to me.

A. Yes.

Q. And you knew that you would be asked to identify this person, correct?

A. Yes.

Q. And there's—'cause there's no one else—there's no other black male sitting at counsel table, is there?

A. Correct.

Q.  So, it's obvious then that he would be the person you would select, correct?

A. Yes.

. . . .

Q. Now, the bottom line is, ma'am, you don't really know who the robber was; is that correct?

A. No, that's not the case.

Q. But you're not certain that it was [appellant]?

A. Because I saw him through the video camera, that's why I said I'm not quite certain.

Q. You're not certain. All right. So, you think it might be him, but you're not certain?

A. Because it's a video camera.

Q. What?

A. The video—the video image is not clear. That's why I said it's not clear on him.

Q. Right. So, you're not certain that—what you're agreeing then is it could be somebody else?

A. I can't answer to that question.

At closing argument, appellant emphasized the problematic lineup at which Lee had identified appellant:

Now, what this lady—this was a very nice lady. What does she want to do? She wants to please people. And that's normal. She's a nice lady. And what happens? She goes down to the police station. And I'm sure—just use your common sense. She had to be told in some way we've got a suspect. The suspect may be there. We think we know who he is. I'm sure that was communicated to her in some way. But an officer is not going to come in here and say they didn't follow the rules correctly. The means—the end justifies the means. I mean, they're going to—of course, they're going to say we just read it out to her the correct way and that was it. But just think, not only did she have trouble with English, her son was down there translating for her. So, I'm sure she felt she had to answer questions a certain way or pick somebody. I mean, just common sense. . . .

And she thinks well, the police, they developed a suspect and they must have the right one.

. . . .

Now—now, I told you—I talked to you about human nature—human nature. People don't want to look embarrassed. They don't want to admit mistakes. All right. The officers that testified in this case, they don't want to make a mistake—don't want to admit they

made a mistake or didn't follow the rules correctly. They're always going to say they did the proper thing. We have a suspect.

. . . .

But she wasn't certain. She picked out somebody she thought looked like him. She wanted to help. She wanted—she thought she was doing her duty. That's normal human nature. And the officers, normal human nature, helping her. They want to solve the case. They know who he is. That's why it's better to not have somebody that's involved in the case do the lineup and stuff. Because there won't be any outside forces, you know, telling the client or nudging you picked the right one or good or anything. There won't be any question about how valid it was, how fair it was.

The State responded to this argument in its own closing:

Let's also talk about this lineup. [Appellant] wants to talk to you about how the lineup was misleading and about how, you know, that maybe the officers were trying to mislead her, that it has created improperly [sic]. But don't you know that he didn't want you to see the lineup. He objected to it. And don't you know that if there was something so misleading on that lineup, that he would have wanted you to have seen it.

[APPELLANT]: Your Honor, we object to that. That's outside the record and also in bad faith.

THE COURT: Be overruled.

*Green v. State,* No. 14–10–00438–CR, 2012 WL 2783862 (Tex. App. -- Houston [14th Dist.] 2012,

no pet.) (not designated for publication).

## IV.    Analysis

### A.    The Claim that the Evidence was Insufficient   (Ground 1)

Green asserts that the State based its case on the theory that the male perpetrator wore a

bandanna across his face while robbing the A-1 Beauty Supply.   Green notes that Lee, the

complainant, testified that the man who robbed her was wearing a thin stocking mask covering his

face. Green states that the surveillance video also showed that the male robber wore a mask, not a bandanna. Green points out that during the prosecutor's opening statement, she stated that Lee was scared for her life, opened the cash box, and handed over the cash to the man who came in to the store with a bandanna over his face and a hooded sweat shirt.

Green contends that the State also presented an accomplice's testimony corroborating the opening statement but contradicting both Lee and the surveillance video. The witness, Hudson, testified that before the robbery, the defendants put on hoodies and covered their faces with bandannas. When they got back in the car, they took the bandannas off and unzipped the jackets and put them on the car floor. Green argues that the accomplice witness's testimony was contradicted by Lee's testimony and by the surveillance video and photographs taken from that video.

In reviewing legal sufficiency of the evidence, a federal habeas court considers whether, viewing all the evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the existence of facts necessary to establish the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318-19 (1979). Credibility choices and conflicting inferences are to be resolved in the fact-finder's favor. *United States v. Cyprian,* 197 F.3d 736, 740 (5th Cir. 1999), *cert. denied,* 531 U.S. 822 (2000). This issue is whether the evidence satisfied the "substantive elements of the criminal offense as defined by state law." *Brown v. Collins,* 937 F.2d 175, 181 (5th Cir. 1991) (quoting *Jackson,* 443 U.S. at 324 n.16). The court need not find that the evidence excluded every reasonable hypothesis of innocence or was wholly inconsistent with every conclusion except that of guilt, provided a reasonable trier of fact could have found that the evidence — whether direct or circumstantial — and all reasonable inferences from the evidence established guilt beyond a reasonable doubt. *United States v. Salazar,* 958 F.2d 1285,

1294 (5th Cir.), *cert. denied,* 506 U.S. 863 (1992). If the state court has carefully reviewed the constitutional sufficiency of the evidence, that determination is entitled to substantial weight. *Jackson v. Virginia,* 443 U.S. 307, 332 n.15. (1979).

Green's central contention is that Hudson, a main prosecution witness, was an accomplice whose testimony had to be corroborated under article 38.14 of the Texas Code of Criminal Procedure. TEX. CRIM. PROC. CODE ANN. art. 38.14 (Vernon 1979) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."). Under Texas law, an accomplice is a person who "*participates* before, during, or after the commission of the crime and can be prosecuted for the same offense as the defendant or for a lesser-included offense." *Medina v. State,* 7 S.W.3d 633, 641 (Tex. Crim. App. 1999) (emphasis added). As a threshold matter, this is a state-law claim and is not a basis for federal habeas relief. Only federal constitutional claims are cognizable in a federal habeas proceeding. *Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). "[T]he Constitution imposes no requirement that the testimony of an accomplice-witness be corroborated by independent evidence. The prosecution's failure to satisfy the accomplice-witness sufficiency rule, and a state court's failure to enforce that rule, are not a basis for federal habeas relief. *Brown v. Collins,* 937 F.2d 175, 182 n.12 (5th Cir. 1991).

Green's arguments also fail on the merits. The Fourteenth Court of Appeals rejected Green's challenge to the sufficiency of the evidence. The Fourteenth Court of Appeals issued the last reasoned opinion on this matter. "When one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered

to rest on the same ground as did the reasoned state judgment." *Bledsue v. Johnson,* 188 F.3d 250,

256 (5th Cir. 1999). This "look through" doctrine enables a federal habeas court "to ignore—and

hence, look through—an unexplained state court denial and evaluate the last reasoned state court

decision." *Id.; see also Renz v. Scott,* 28 F.3d 431, 432 (5th Cir. 1994) (finding that the denial of

relief "on the findings of the trial court" by the Texas Court of Criminal Appeals adopts an express

finding by the trial court that a claim was procedurally barred from habeas review); *Ylst v.*

*Nunnemaker,* 501 U.S. 797, 803 (1991) ("Where there has been one reasoned state judgment

rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same

claim rest upon the same ground."). This court "looks through" the order of the Texas Court of

Criminal Appeals to the appellate court's decision.

The Fourteenth Court of Appeals found as follows:

> In evaluating challenges to the sufficiency of the evidence, we
> consider all the evidence in the light most favorable to the verdict.
> *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L.
> Ed.2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 895 (Tex. Crim.
> App. 2010). If, when viewed in this light, any rational factfinder
> could have found the essential elements of the offense beyond a
> reasonable doubt, then the evidence is sufficient to support the
> verdict. *Jackson,* 443 U.S. at 319; *Clayton v. State,* 235 S.W.3d 772,
> 778 (Tex. Crim. App. 2007). Before a conviction may rest upon an
> accomplice witness's testimony, that testimony must be corroborated
> by other evidence tending to connect the accused with the crime.
> TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). "To
> determine whether an accomplice's testimony is corroborated, we
> eliminate the accomplice testimony and review the remaining
> evidence to determine whether it *tends* to connect the defendant to the
> offense." *Nolley v. State,* 5 S.W.3d 850, 853 (Tex. App. – Houston
> [14th Dist.] 1999, no pet.) (citing *Knox v. State,* 934 S.W.2d 678, 686
> (Tex. Crim. App. 1996)). To evaluate the sufficiency of the
> corroboration, we consider each case on its own facts and
> circumstances. *Id.* (citing *Munoz v. State,* 853 S.W.2d 558, 559 (Tex.
> Crim. App. 1993)). The corroborative evidence may be either

circumstantial or direct and need not establish the defendant's guilt or directly link him to the charged offense; instead, it is sufficient if it "tends" to connect him to the offense. *Id.* (citing *Munoz,* 853 S.W.2d at 559, and *Gosch v. State,* 829 S.W.2d 775, 777 (Tex. Crim. App. 1991)). Although an accomplice witness may testify to any number of facts corroborated by other evidence, if the corroborated facts do not tend to connect the accused with the crime, the corroboration does not satisfy article 38.14. *Id.* (citing *Paulus v. State,* 633 S.W.2d 827, 843 (Tex. Crim. App. 1981)). If the corroborating evidence fails to connect the defendant with the charged offense, the evidence is insufficient to support the conviction. *Id.* (citing *Munoz,* 853 S.W.2d at 560). As in a general sufficiency review, we view the evidence in the light most favorable to the jury's verdict when evaluating the corroborative value of non-accomplice-witness testimony. *See Lacaze v. State,* 346 S.W.3d 113, 117 (Tex. App. – Houston [14th Dist.] 2011, pet. ref'd) (citing *Brown v. State,* 270 S.W.3d 564, 567 (Tex. Crim. App. 2008)).

Although appellant asserts a broad sufficiency challenge, his arguments are heavily focused on the non-accomplice-witness evidence. Appellant contends in just one sentence that Hudson herself "did not witness the robbery" but "merely drove the car, waited there, then later testified as to circumstances that made her believe that [appellant] committed robbery." While we agree that Hudson's testimony is circumstantial, it would nonetheless be sufficient to support appellant's conviction as long as it was corroborated by non-accomplice-witness testimony tending to connect appellant with the charged offense. *See Clayton v. State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt."). Hudson testified that appellant suggested that the group rob Lee's store; handed out guns in the car (which broadly matched the witnesses' description of the guns used); pulled on a bandanna and hoodie; and returned less than 15 minutes later with a bag full of cash. This evidence—assuming it was corroborated by non-accomplice-witness testimony tending to connect appellant to the charged offense—is plainly sufficient to support appellant's conviction. Appellant does not seriously contest this point. Instead, appellant focuses on the sufficiency of the remaining evidence to corroborate Hudson's accomplice-witness testimony.

The evidence corroborating Hudson's testimony in this case is as follows:

• The beauty supply store's external camera recorded a man walking through an adjacent alley moments before the robbery. The man is shown wearing a green hooded jacket covering a black shirt or hoodie and is accompanied by a woman wearing a gray hoodie with a bandanna over her face. The same woman was recorded by interior surveillance videos moments later pointing a gun at the store's employees and ordering them to the back of the store. At the same time, the register camera recorded a man wearing a black hooded coat holding a gun to Lee as Lee handed him cash from the register.

• At trial, Lee identified the man in the external video as appellant, though she conceded that she was "not quite certain" because the video is somewhat unclear.

• Lee identified appellant at the pretrial lineup about two months after the robbery. Lee viewed her surveillance video to help her identify appellant, but also stated that she had been able to see through appellant's mask at the robbery because the mask was very thin. According to Officer Varela, Lee — with her son interpreting — was read a standard lineup instruction indicating that the suspect might not be present and that she should identify a suspect only if she believed him to be the perpetrator. Although she testified at the pretrial identification hearing that she understood she was to "pick the most closest one," Lee later testified — and was corroborated by Officer Varela — that she understood she was to pick "the very one" who had robbed her.

• Lee identified appellant in court as the robber, although she seemed at one point to accept appellant's suggestion that she had identified appellant because he was the only black man seated at the counsel's table.

• The guns that the police recovered at appellant's apartment matched the descriptions of those used in the robbery of Lee's store as described by Lee and her employees in general terms (apart from Hudson's description of the weapons in greater detail).

Appellant contests the sufficiency of each piece of corroborative evidence in turn. With respect to the video recordings, appellant cites

*Nolley* for the proposition that "presence at the scene of the crime is not sufficient to corroborate accomplice testimony." But the court in *Nolley* actually stated that "[a]lthough non-accomplice evidence that the accused was in the company of the accomplice at or near the time or place of the offense *is* proper corroborating evidence, such evidence *alone* is not *conclusive* corroboration." *Id.* at 854 (emphasis added). Rather, "[t]here must be *some* evidence which, when coupled with evidence which places the accused in the company of the accomplice at the time of the offense, tends to connect the accused to the commission of the crime." *Id.* (emphasis in original); *see also Jackson v. State,* 745 S.W.2d 4, 13 (Tex. Crim. App. 1988) (presence in company of accomplice near time of offense not alone conclusive, but important factor for corroboration). Here, the male perpetrator's face is visible on the store's external camera's recording taken shortly before the robbery. In her testimony, Lee identified appellant as the male perpetrator. The male perpetrator is also shown accompanying a woman, wearing a bandanna over her face and a gray hoodie, who is shown seconds later on an internal camera pointing a gun at Lee's employees and forcing them to the back of the store. At the same time, a male is shown on the register camera holding a gun to Lee as she takes cash from the register. In addition, the guns found in appellant's apartment matched the eyewitnesses' general descriptions of the guns used in the robbery. *See Hernandez v. State,* 939 S.W.2d 173, 178 (concluding that evidence was sufficient when it showed that appellant was present at the crime scene, had been in possession of a shotgun a few months before the robbery similar to that used in the robbery, and fled the scene without explanation); *Cockrum v. State,* 758 S.W.2d 577, 582 (Tex. Crim. App. 1988) ("Even evidence that a defendant had a gun which was merely similar to the murder weapon may corroborate accomplice testimony.").

Appellant argues that "[Lee's] in-court identification should be discarded outright, since [Lee] admitted on cross-examination that she identified [appellant] because he was sitting at counsel table." But appellant did not object to the in-court identification, nor did he obtain a ruling excluding it. The jury was not required to discard Lee's identification outright. Instead, the question is one of the weight of Lee's identification rather than its admissibility. Lee did seem at one point to accept appellant's argument that she had identified appellant because he was the only black man seated at the counsel's table, but through most of her testimony, she seemed to maintain that her identification was based on her viewing of the surveillance video and her own recollection of appellant's face as she

could see it through his stocking mask.  While Lee's identification was clearly not as credible as some identifications may be, we are not convinced that it was insufficient *as a matter of law* as tending to corroborate Hudson's testimony, particularly when taken in combination with other corroborative evidence.  The issue is not whether Lee's identification independently establishes appellant's guilt but whether it "tends" to connect appellant with the charged offense.  In making this determination, as noted above, we must take Lee's testimony in the light most favorable to the verdict and defer to the jury on its determination of her credibility.  Viewed in this light, we conclude that Lee's in-court identification tends to connect appellant to the robbery and thus is sufficient — particularly when combined with the other corroborative evidence — to corroborate Hudson's testimony.  *See Lacaze,* 346 S.W.3d at 113 (holding that eyewitness identification was sufficient to corroborate accomplice-witness-testimony where identifying eyewitness was "an admitted crack addict" and was able to make only a tentative identification of appellant when he viewed a photospread the first time because "we must defer to the jury on the credibility determination and assume that the jury found [the identifying witness] to be a credible witness in his identification"); *see also Brown,* 270 S.W.3d at 568 ("The fact that the testimony may have been subject to impeachment as coming from an admitted perjurer and drug user goes to the weight of the evidence and not to its admissibility.").

Viewed in the light most favorable to the verdict, the non-accomplice-witness testimony and physical evidence in this case "tends" to connect appellant with the charged offense.  Taking the accomplice-witness testimony, the non-accomplice-witness testimony, and the physical evidence together — and viewing them all in the light most favorable to the verdict — we conclude that the evidence is sufficient to support appellant's conviction.  We overrule appellant's first issue.

*Green v. State,* No. 14–10–00438–CR, 2012 WL 2783862, **5-7 (Tex. App. – Houston [14th Dist.] 2012, no pet.) (not designated for publication).

Green argues that due to errors in translation, the complainant, Lee, believed that she was supposed to identify the person who most closely resembled the perpetrator.  The accuracy of a

translation is a fact question for the jury. *Calixto v. State,* 66 S.W.3d 505, 510 (Tex. App. – Austin 2001, pet. ref'd).   Translation accuracy may be evaluated based on cross-examination of the testifying witness, independent evidence, or by cross-examination of the interpreter. *Garcia v. State,* 887 S.W.2d 862, 875 (Tex. Crim. App. 1994), *overruled on other grounds by Hammock v. State,* 46 S.W.3d 888, 893 (2001).   Witness credibility is also a question for the trier of fact.   Appellate courts defer to the trial court's determination of historical facts when those facts are based on an evaluation of credibility and demeanor and are supported by the record. *Hernandez v. State,* 118 S.W.3d 469, 476 (Tex. App. - Eastland 2003, pet. ref'd).   Such deference is appropriate here.

Green further argues that the evidence was insufficient to support his conviction because Hudson's testimony was inconsistent with Lee's testimony about what the robber was wearing.   The fact that witnesses recount slightly different versions of what happened is not enough to make the evidence insufficient. *Amos v. Thornton,* 646 F.3d 199, 208 (5th Cir. 2011).   Such discrepancies are to be expected.

Under *Jackson,* a rational trier of fact could have found, beyond a reasonable doubt, that Green committed the offense of aggravated robbery.   The jury heard evidence that on February 19, 2008, Green exhibited a deadly weapon in the course of committing theft of property belonging to Lee.   The evidence was sufficient to support Green's conviction for aggravated robbery.   Green is not entitled to habeas relief on this claim. *Callins v. Collins,* 998 F.2d 269, 276 (5th Cir. 1993), *cert. denied,* 510 U.S. 1141 (1994).

**B.      The Claim Based on an Unduly Suggestive Line-up   (Ground 2)**

Green argues that the trial judge abused his discretion by denying the motion to suppress the identification testimony.   He argues that during the hearing on the motion to suppress, Lee testified

that the officer told her that a suspect was in the line-up and to pick the one closest to the suspect. Lee testified that she used the actual video surveillance footage from the robbery to aid her during the live line-up identification procedure. Lee testified that she was not certain that Green was the suspect, but that his complexion was very close. Lee later testified that she made her selection at the line-up based in part on the unclear surveillance video. She was not certain about her identification. Lee testified that her in-court identification was based on seeing Green at counsel table. Green argues that Lee's level of uncertainty demonstrates the substantial likelihood of misidentification due to a tainted line-up identification procedure.

The respondent argues that this claim is procedurally barred. (Docket Entry No. 11, Respondent's Motion for Summary Judgment, pp. 18-20). A state prisoner seeking federal habeas relief must first "exhaus[t] the remedies available in the courts of the State," 28 U.S.C. § 2254(b)(1)(A), giving those courts "the first opportunity to address and correct alleged violations of [the] prisoners federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Exhaustion requires that the prisoner "have fairly presented the substance of his claim to the state courts." *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997). "Determining whether a petitioner exhausted his claim in state court is a case- and fact-specific inquiry." *Moore v. Quarterman*, 533 F.3d 338, 341 (5th Cir. 2008) (en banc).

In Texas, a criminal defendant may challenge a conviction by a direct appeal followed by a petition for discretionary review in the Texas Court of Criminal Appeals, or by a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court, followed by transmittal to the Texas Court of Criminal Appeals once the trial court determines whether findings are necessary. *See* TEX. CODE CRIM. PROC. art. 11.07 § 3(c); *see also Busby v.*

*Dretke,* 359 F.3d 708, 723 (5th Cir. 2004) ("Habeas petitioners must exhaust state remedies by pursuing their claims through one complete cycle of either state direct appeal or post-conviction collateral proceedings.").

A federal court generally cannot review the merits of a state prisoner's habeas petition if the petitioner has failed to satisfy the procedural requirements for raising the merits. *See, e.g., Magwood v. Patterson,* —— U.S. —, 130 S. Ct. 2788, 2801 (2010) ("If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention — whether in trial, appellate, or habeas proceedings, as state law may require — procedural default will bar federal review."). A habeas claim can be procedurally defaulted in two ways. *Coleman v. Dretke,* 395 F.3d 216, 220 (5th Cir. 2004), *cert. denied,* 546 U.S. 938 (2005); *Bledsue v. Johnson,* 188 F.3d 250, 254 (5th Cir. 1999). The first way is by failing to exhaust available state remedies, when the court to which the petitioner would be required to present his claims to meet the exhaustion requirement would find the claims procedurally barred. *Williams v. Thaler,* 602 F.3d 291, 305 (5th Cir. 2010). When "it is obvious that the unexhausted claim would be procedurally barred in state court, [the court] will forego the needless 'judicial ping-pong' and hold the claim procedurally barred from habeas review." *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995) (quoting *Steel v. Young,* 11 F.3d 1518, 1524 (10th Cir. 1993); *see also Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991)).

The second way to procedurally default a habeas claim occurs when the claim is presented to the highest available state court but that court has dismissed the claim on an adequate and independent state-law procedural ground instead of deciding it on the merits. *See, e.g., Harris v. Reed,* 489 U.S. 255, 262 (1989). "If a state court clearly and expressly bases its dismissal of a prisoner's claim on a state procedural rule, and that procedural rule provides an independent and

adequate ground for dismissal, the prisoner has procedurally defaulted his federal habeas claim." *Nobles v. Johnson,* 127 F.3d 409, 420 (5th Cir. 1997), *cert. denied,* 523 U.S. 1139 (1998). The state procedural rule must be "both independent of the merits of the federal claim and an adequate basis for the court's decision." *Finley v. Johnson,* 243 F.3d 215, 218 (5th Cir. 2001). A state procedural rule is an adequate basis for the court's decision only if it is "strictly or regularly applied evenhandedly to the vast majority of similar claims." *Amos v. Scott,* 61 F.3d 333, 339 (5th Cir.) (emphasis omitted), *cert. denied,* 516 U.S. 1005 (1995).

The state habeas court found as follows:

1.  The writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal. *Ex parte Webb,* 270 S.W.3d 108 (Tex. Crim. App. 2008).

2.  "Record claims" which could have been but were not presented on direct appeal should not be considered on habeas. *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. reh'g).

3.  The court finds that Applicant's claim that the trial court abused its discretion by failing to suppress the complainant's identification of the Applicant is a "record claim," which could have been but was not presented on direct appeal, and concludes that it cannot be considered on habeas. *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. reh'g).

(Docket Entry No. 10-37, p. 16).

The Texas Court of Criminal Appeals denied Green's state application, without written order, on the trial court's findings. The state habeas claims were defaulted based on adequate and independent state grounds. This claim is procedurally barred in federal court, and cannot be

presented unless Green can overcome the procedural bar. *See, e.g., Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005).

Green must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *Wainwright v. Sykes,* 433 U.S. 72, 87-91 (1977); *Ries v. Quarterman,* 522 F.3d 517, 523-24 (5th Cir. 2008).

Green offers no arguments that would excuse the procedural default. The claim based on a challenge to the pretrial identification is procedurally barred and provides no basis for the habeas relief Green seeks.

## C.    The Claim of Ineffective Assistance of Trial Counsel   (Ground 3)

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that his counsel's actions fell below an objective standard of reasonableness and that the petitioner suffered prejudice as a result. *Strickland v. Washington,* 466 U.S. 668 (1984); *Martin v. Cain,* 246 F.3d 471, 477 (5th Cir. 2001). The district court may dispose of a claim on either effective assistance or the absence of prejudice. A court need not address the reasonableness component first, and if a petitioner fails to make one showing, the court need not address the other. *Strickland,* 466 U.S. at 697.

In assessing the reasonableness of counsel's performance, the court presumes that the performance falls within the "wide range of reasonable professional assistance" and that "the challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689; *Gray v. Lynn,* 6 F.3d 265, 268 (5th Cir. 1993). If counsel's action is based on well-informed strategic decisions, it is "well within the range of practical choices not to be second-guessed." *Rector v.*

*Johnson,* 120 F.3d 551, 564 (1997) (quoting *Wilkerson v. Collins,* 950 F.2d 1054, 1065 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993)).   To show prejudice, a convicted defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   An attorney's strategic choices based on information supplied by the defendant and gathered from an investigation of the relevant law and facts "are virtually unchallengeable." 466 U.S. at 691.

Green alleges that his attorney was ineffective by failing to object to false and perjured testimony.   Green faults his counsel for not objecting to Hudson's testimony that Green wore a bandanna during the robbery of the A-1 beauty supply.  Green alleges that his counsel failed to object knowing that Hudson's testimony contradicted what the surveillance video of the offense showed and contradicted Lee's testimony that the robber wore a stocking mask covering his entire face. Green argues that his counsel was deficient in failing to object to what he characterizes as misleading, coercive, false, and perjured testimony.

In addressing these arguments, the state habeas court found as follows:

> 10.   The Court concludes that Fosher was not ineffective and acted in accord with prevailing professional norms throughout his representation. *Strickland,* 466 U.S. at 700.

> 11.   The Court concludes that Applicant was not prejudiced by Fosher's representation. *Strickland,* 466 U.S. at 700.

> 12.   The Court concludes that the totality of the representation afforded Applicant was sufficient to protect his right to reasonably effective assistance of trial counsel.

Sufficiency of the [sic]

> 1.   A challenge to the sufficiency of the evidence is not cognizable on an application for a post-conviction writ of

habeas corpus. *Ex parte Perales,* 215 S.W.3d 418, 419 (Tex. Crim. App. 418); *Ex parte Grigsby,* 137 S.W.3d 673, 674 (Tex. Crim. App. 2004).

2.  The Court finds that Applicant's claim that trial counsel was ineffective for failing to object to false or perjured testimony is really an attack on the sufficiency of the evidence and concludes that it cannot be considered on habeas.

3.  Nevertheless, to successfully assert that trial counsel's failure to object amounted to ineffective assistance, the applicant must show that the trial judge would have committed error in overruling such an objection. *Ex parte Martine,* 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Ex parte White,* 160 S.W.3d 46, 53 (Tex. Crim. App. 2004).

4.  The Court finds that Applicant has not presented any evidence or other indication that Ashley Hudson lied in her testimony as opposed to her being mistaken, therefore, the trial court would not have erred by overruling this objection had it been raised.

5.  The Court finds that Applicant was not prejudiced by testimony that he was not wearing the same type of mask as the perpetrator in the surveillance video, and if anything, this testimony aided his defensive theory that he was misidentified.

6.  The Court concludes that Applicant fails to show how his counsel was ineffective, therefore, relief is denied.

(Docket Entry No. 10-37, pp. 18-19). Green must show that the state court's ruling was contrary to, or unreasonable application of, *Strickland,* or unreasonably determined the facts based on the record evidence. If the objections Green asserts that his counsel should have raised would have been futile, his counsel cannot be deficient for failing to do so. *Koch v. Puckett,* 907 F.2d 524, 527 (5th Cir. 1990); *Green v. Johnson,* 160 F.3d 1029, 1036-37 (5th Cir. 1998), *cert. denied,* 525 U.S. 1174 (1999) (citing *Sones v. Hargett,* 61 F.3d 410, 415 (5th Cir. 1995)).

Even assuming that Hudson's testimony was inconsistent with Lee's testimony, counsel could reasonably have determined that there was no basis for lodging an objection. He reasonably could have concluded that witnesses often give inconsistent testimony. Counsel's strategy was to argue that there was no physical evidence linking Green to the robbery. Counsel focused on the complainant's failure to unequivocally identify Green as the perpetrator. Counsel argued that Lee, the complainant, was not fluent in English and may have identified Green as the perpetrator based on his race. Counsel also argued that Lee identified Green as the perpetrator two months after the robbery and that she may have done so because she was eager to please law-enforcement officers by making an identification.

As to the other witness, Hudson, defense counsel urged the jury to consider her motive for inculpating Green to obtain a favorable sentence. Counsel also argued that given that Hudson was only 19 years old, she lacked extensive knowledge of guns, suggesting that her testimony about guns had been coached. Rather than focusing on Hudson's testimony about the bandanna, counsel reasonably chose to question her motive for testifying against Green.

Green did not meet his burden of establishing deficient performance and prejudice under *Strickland.* The record shows that counsel's challenged decisions were strategic choices well within the category of reasonable choices. Green fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland,* or was an unreasonable determination of the facts based on the evidence in the record. The respondent is entitled to summary judgment on this claim.

**D.     The Claim Based on the Knowing Use of False Testimony   (Ground 4A)**

Green alleges that the prosecutor knowingly presented false and perjured testimony when Hudson testified that the male perpetrator wore a bandanna during the offense.  Green argues that the jury was misled, and that if the prosecutor had corrected the testimony in the jury's presence, there is a reasonable probability that the verdict would have been different.

To establish that these allegations provide a basis for habeas relief, Green must show that the prosecution knowingly presented false testimony.  *Napue v. Illinois,* 360 U.S. 264, 79 S. Ct. 1173 (1959).  Inconsistencies or errors in a witness's testimony do not establish perjury.  *Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990).  The jury heard the testimony of the  complainant and a witness and could decide whether and how the discrepancies affected credibility.   Green's conclusory assertions that the witness's testimony was false, and the mere contradictory testimony of another witness, are insufficient to show that the State knowingly presented false, material testimony.  *See United States v. Leahy,* 82 F.3d 624, 632 (5th Cir. 1996); *United States v. Washington,* 44 F.3d 1271, 1282 (5th Cir. 1995).

Although it offends constitutional due process for a prosecutor to knowingly use or intentionally fail to correct testimony that he knows to be false, the record does not show that this occurred here.  *See Napue v. Illinois*, 360 U.S. 264, 271 (1959).  Discrepancies in witnesses' testimony raises a credibility question for a jury and do not show that testimony was false.  *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *Little v. Butler*, 848 F.2d 73, 76 (5th Cir. 1988).

The state habeas court found as follows:

1.     A prosecutor's active or passive use of perjured testimony violates a defendant's right to due process.  *Ex parte Castellano*, 863 S.W.2d 476, 481 (Tex. Crim. App. 1993); *Ex*

parte *Chabot*, 300 S.W.3d 768, 770-71 (Tex. Crim. App. 2009) (citing *Ex parte Fierro*, 934 S.W.2d 370 (Tex. Cr. App. 1996)).

2.   The State commits a due process violation when (1) the State presents false testimony, (2) the State knows or has reason to know that the testimony was false, and (3) the false testimony is material. Furthermore, the prosecutor must correct a false impression, including those that do not amount to perjury, left by a witness. *Giglio v. United States*, 405 U.S. 150, 153, 92 S. Ct. 763 (1972).

3.   The prosecutor must correct a false impression, including those that do not amount to perjury, left by a witness. *Giglio*, 405 U.S. at 153; *Napue*, 360 U.S. at 269; *Alcorta*, 355 U.S. at 32.

4.   A charge of perjury is a serious accusation and must be clearly supported by the evidence. *Haywood v. State*, 507 S.W.2d 756, 760 (Tex. Crim. App. 1974).   Under the applicable standard, the "applicant has the burden to prove by a preponderance of the evidence that the error contributed to his conviction or punishment." *Chabot*, 300 S.W.3d at 771.

5.   Even if conflicting testimony is presented, that fact alone would not indicate perjury. *Losacla v. State*, 721 S.W.2d 305, 312 (Tex. Crim. App. 1986); *Brown v. State*, 477 S.W.2d 617, 623 (Tex. Crim. App. 1972).

6.   The Court finds that Applicant fails to prove that Ashley Hudson lied when she testified that he wore a bandana during the robbery, rather than just being mistaken.

7.   The Court finds that Applicant did not show that the State knew, or should have known, that Ashley Hudson had lied rather than just being mistaken.

8.   The Court finds that Ashley Hudson's testimony that he wore a bandana during the robbery is not a material fact that contributed to his conviction because it undermined the State's theory that Applicant was the perpetrator in the surveillance video wearing a stocking mask.

9.    The Court concludes that Applicant has failed to meet his
      burden of proving that his conviction was secured through the
      use of perjured testimony, and consequently, this ground for
      relief is denied.

(Docket Entry No. 10-37, pp. 19-20).  The Court of Criminal Appeals expressly based its denial of

habeas relief on these findings, which are entitled to a presumption of correctness.  28 U.S.C.

§ 2254(e)(1).  Green has not produced clear and convincing evidence to rebut these findings.  The

state court's decision on the prosecutorial misconduct reasonably applied the law to the facts,

consistent with clearly established federal law.  Green is not entitled to habeas corpus relief on this

claim.  28 U.S.C. § 2254(d)(1).

### E.    The Claim Based on a Failure to Disclose Favorable Evidence   (Ground 4B)

Green argues that the State concealed the identity of the Crime Stoppers tipster.  Green

alleges that he first learned that Hudson was the tipster from the Memorandum Opinion issued by

the Fourteenth Court of Appeals on July 10, 2012.  He alleges that the suppression of the evidence

denied him the opportunity to present evidence that Hudson had a financial interest in the case before

becoming the State's witness.  Green maintains that the jury was deprived of the right to fully

evaluate the evidence in the case which clearly undermined the confidence of the verdict.  Green

argues that the identity of the Crime Stoppers reporter was *Brady* evidence wrongfully withheld.

Green contends that had the evidence been disclosed to the defense and effectively used, the results

would have been different.

The state habeas court found as follows:

4.    The Court finds that Ashley Hudson's role as the Crime
      Stopper's tipster was presented during trial.  *Green,* 2012 WL
      2783862 at *1.  Therefore, at the very least, Applicant was

informed that Ashley Hudson was the informant before the close of evidence in his trial.

5.    The Court finds that it was Applicant's burden to preserve his objection to the Brady violation and raise it on direct appeal. *Pena v. State,* 353 S.W.3d 797, 807-08 (explaining preservation of error in context of Brady violation).

6.    The Court finds that Applicant [sic] It is well-settled "that the writ of habeas corpus should not be used to litigate matters which should have been raised on direct appeal." *Ex parte Webb,* 270 S.W.3d 108 (Tex. Crim. App. 2008); *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996); *Ex parte Goodman,* 816 S.W.2d 383, 385 (Tex. Cr. App. 1991); *see Ex parte Groves,* 571 S.W.2d 888, 890 (Tex. Cr. App. 1978) (habeas corpus does not lie as a substitute for an appeal). Accordingly, Applicant's seventh ground for relief should be denied.

7.    The Court finds that Applicant's claim that the State failed to disclose the fact that the accomplice witness, Ashley Hudson, provided the Crime Stopper's tip is a "record claim," which could have been but was not presented on direct appeal, and concludes that it cannot be considered on habeas. *Ex parte Gardner,* 959 S.W.2d 189, 199 (Tex. Crim. App. 1996) (op. reh'g).

(Docket Entry No. 10-37, pp. 20-21).

The Texas Court of Criminal Appeals denied Green's state application, without written order, on the trial court's findings. The state habeas claims were defaulted based on adequate and independent state grounds. This claim is procedurally barred in federal court. *See, e.g., Aguilar v. Dretke,* 428 F.3d 526, 535 (5th Cir. 2005). Green offers no arguments that would excuse the procedural default. Because the claim based on the failure to disclose the identity of the tipster is procedurally barred, Green is not entitled to habeas relief on this claim.

## IV.    Conclusion

The respondent's Motion for Summary Judgment, (Docket Entry No. 11), is granted. Green's petition for a writ of habeas corpus is denied. This case is dismissed. Any remaining pending motions are denied as moot. Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a petitioner must obtain a certificate of appealability before appealing the district court's denial of habeas relief. 28 U.S.C. § 2253(c)(2). "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322 (2003)(citing 28 U.S.C. § 2253(c)(1)). "The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal." *Id.* (citing *Slack v. McDaniel*, 529 U.S. 473, 482 (2000); *Hohn v. United States*, 524 U.S. 236, 248 (1998)).

A COA will be granted only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are adequate to deserve encouragement to proceed further." *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (citation and internal quotation marks omitted). Any doubt as to whether to grant a COA is resolved in favor of the petitioner, and the severity of the penalty may be considered in making this determination. *Fuller v. Johnson*, 114 F.3d 491, 495 (5th Cir. 1997).

The analysis "requires an overview of the claims in the habeas petition and a general assessment of their merits." *Miller-El*, 123 S. Ct. at 1039. The court must look to the district court's application of AEDPA to the petitioner's constitutional claims and determine whether the court's

resolution was debatable among reasonable jurists. *Id.* "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." *Id.* Rather, "'[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Id.* at 1040 (citing *Slack v. McDaniel,* 529 U.S. 473, 484).

A district court may deny a certificate of appealability on its own, without requiring further briefing or argument. *Alexander v. Johnson,* 211 F.3d 895, 898 (5th Cir. 2000). The court determines that Green has not made "a substantial showing of the denial of a constitutional right." A certificate of appealability from this decision will not issue.

SIGNED on February 25, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge